NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JOHN BRANDARIZ,

                Plaintiff,

                v.

EUREST SERVICES, INC., *et al.*,

                Defendants.

Civil Action No. 25-18170 (MAS) (TJB)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court upon Defendants Eurest Services, Inc. d/b/a ESFM ("ESFM"), Compass Group North American ("Compass," and collectively with ESFM, "Corporate Defendants"), Cesar Avila ("Avila"), Keisha Mackey ("Mackey"), and Scott Berryman's ("Berryman," and collectively with Avila and Mackey, "Individual Defendants," and collectively with Corporate Defendants, "Defendants") Motion to Dismiss (ECF No. 14) Plaintiff John Brandariz's ("Plaintiff") Complaint (ECF No. 6-2). Plaintiff opposed (ECF No. 15), and Defendants replied (ECF No. 16). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons stated below, the Court denies Defendants' Motion to Dismiss.

## I.    BACKGROUND[1]

### A.    Factual Background

Plaintiff is a male who was employed by Corporate Defendants from around June 6, 2022, until August 11, 2025, as a Regional Vice President. (Compl. ¶¶ 1, 14, 52, ECF No. 6-2.) Plaintiff reported to Division Vice President, Avila, and Plaintiff supervised several employees, including Virginia Umpierrez ("Umpierrez"). (*Id.* ¶¶ 16-17.) "During the course of his employment, Plaintiff observed" that Umpierrez and Avila "were involved in a romantic relationship in violation of company policy" because Avila was "a high-level executive within the company" and "Umpierrez was a lower-level employee." (*Id.* ¶ 18.) Umpierrez and Avila "appeared to be in a quid pro quo relationship, where in exchange for maintaining a romantic relationship, . . . Avila protected . . . Umpierrez from any attempts to correct her performance issues and . . . compensat[ed] her] in the form of bonuses." (*Id.* ¶ 19.) Following a complaint that was made, Plaintiff was contacted by Corporate Defendants' Vice President of Human Resources and confirmed that Avila had requested that a $10,000 spot bonus be awarded to Umpierrez. (*Id.* ¶ 20.) In or about September 2024, a client contacted Plaintiff with concerns about Umpierriez's performance. (*Id.* ¶ 22.) Plaintiff developed a Performance Improvement Plan ("PIP") for Umpierrez to address these concerns but was told by Avila to "trust him" to handle the situation directly. (*Id.* ¶ 23.)

Plaintiff was informed approximately two weeks later by Avila and Mackey, Corporate Defendants' Director of Human Resources, that he would be demoted and placed on a PIP. (*Id.* ¶ 25.) This demotion, however, was not officially documented, Plaintiff was not actually placed on a PIP at that time, "and [he] was never actually demoted." (*Id.* ¶ 26.) Around the time of the

---

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

2

foregoing events, colleagues informed Plaintiff that Avila and Umpierrez were "engaged in an inappropriate romantic relationship" and he was "cautioned to 'be careful'" due to this relationship. (*Id.* ¶ 28.) Plaintiff "understood that . . . Umpierrez had a track record of being difficult to work with, yet . . . Avila regularly shielded her from accountability or discipline." (*Id.* ¶ 29.)

In December 2024, Plaintiff received a year-end review prepared primarily by Avila stating, inaccurately, that Plaintiff had been demoted and put on a PIP. (*Id.* ¶ 32.) Plaintiff, however, remained in his position as Regional Vice President. (*See id.* ¶ 26.) Plaintiff's team members, thereafter, informed him that Avila "shared the details of Plaintiff's demotion with Plaintiff's team members behind Plaintiff's back." (*Id.* ¶ 33.) In or around January 2025, Plaintiff received positive feedback from the Corporate Defendants' client senior leadership team. (*Id.* ¶ 34.) Around the same time, Avila began to exclude Plaintiff from key client discussions. (*Id.* ¶ 35.)

On or around March 13, 2025, Plaintiff submitted an employee complaint to Human Resources about the "inappropriate romantic relationship" between Avila and Umpierrez, and the alleged retaliatory conduct by Avila, including the undocumented PIP and demotion. (*Id.* ¶ 36.) That same day, Corporate Defendants' Human Resources Case Advisor, Nicole Otis ("Otis"), responded and requested that Plaintiff provide details and evidence regarding the "inappropriate romantic relationship." (*Id.* ¶ 37.) "Plaintiff provided such names in an e-mail [message] to . . . Otis, [and] commented that he was unsure how Corporate Defendants could protect the individuals from similar retaliation." (*Id.* ¶ 38.) On March 19, 2025, Otis responded by sending Plaintiff an e-mail message stating that Corporate Defendants "had a zero-tolerance policy for retaliation." (*Id.*) On April 2, 2025, Otis sent Plaintiff an e-mail message advising him that an investigation into his claims was ongoing. (*Id.* ¶ 39.)

On April 7, 2025, Plaintiff learned that his position had been posted on LinkedIn. (*Id.* ¶ 40.) He attempted to contact Avila, but Avila either canceled or did not attend scheduled meetings with Plaintiff. (*Id.*) On April 21, 2025, Plaintiff was informed that, following an investigation, Avila was no longer employed by Corporate Defendants, that some of Plaintiff's claims were substantiated while others were not, and that there were no changes to Plaintiff's position at the time. (*Id.* ¶ 42.) Berryman succeeded Avila as Plaintiff's manager. (*Id.* ¶ 43.) When Plaintiff realized he had not received his two percent merit salary increase for 2025, he contacted Mackey, who told him that she would speak with Berryman. (*Id.* ¶ 45.) There was no follow-up, and Plaintiff never received a salary increase. (*Id.*)

On or about July 14, 2025, Plaintiff was informed by Berryman and Mackey that he was being placed on a thirty-day PIP. (*Id.* ¶ 46.) As part of the PIP, he was required to meet weekly with Berryman, but those meetings were never scheduled by Berryman. (*Id.* ¶ 50.) Prior to the end of the thirty-day PIP, on or about August 4, 2025, Plaintiff was terminated by Berryman for failing to meet the requirements of the PIP, effective August 11, 2025. (*Id.* ¶ 52.)

### B.    Procedural Background

Plaintiff filed his Complaint on October 29, 2025, asserting one cause of action against Defendants for retaliation/improper reprisal in violation of the New Jersey Law Against Discrimination (the "NJLAD"), N.J. Stat. Ann. § 10:5-12(d). (*See generally* Compl.) Defendants removed the matter to this Court invoking its diversity jurisdiction. (Am. Notice of Removal, ECF No. 6.) Defendants subsequently filed the instant Motion to Dismiss. (Defs.' Mot. to Dismiss, ECF No. 14.) Plaintiff opposed (Pl.'s Opp'n Br., ECF No. 15), and Defendants replied (Defs.' Reply Br., ECF No. 16).

4

## II.    <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure[2] 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

---

[2] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

5

## III.    DISCUSSION

Defendants move to dismiss Plaintiff's Complaint in its entirety under Rule 12(b)(6) for failing to state a claim pursuant to the NJLAD. (*See generally* Defs.' Moving Br., ECF No. 14-1.) The NJLAD protects individuals from reprisal in circumstances where "that person has opposed any practices or acts forbidden under this [A]ct or because . . . [he has] filed a complaint, testified or assisted in any proceeding under this [A]ct . . . ." N.J.S.A. § 10:5-12(d). To state a claim for retaliation pursuant to the NJLAD, a plaintiff must adequately allege that: (1) he engaged in a protected activity known by the employer; (2) he was subjected to an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. *Battaglia v. United Parcel Serv., Inc.*, 70 A.3d 602, 619 (N.J. 2013) (citation omitted). The Court addresses each element in turn.[3]

### A.    Protected Activity

Defendants argue that Plaintiff's Complaint should be dismissed because it fails to adequately allege that Plaintiff engaged in a protected activity because he does not allege that he reported quid pro quo harassment. (Defs.' Moving Br. 5-9.) Specifically, Defendants argue that Plaintiff has not pleaded facts sufficient to show a quid pro quo sexual harassment scenario. (*Id.*

---

[3] Defendants do not contest that Plaintiff's termination was an adverse employment action. (Defs.' Moving Br. 10.) The Court therefore finds that Plaintiff adequately alleged that he suffered an adverse employment action.

6

at 11-12.)[4] Plaintiff argues that he adequately alleges that his employee complaint regarding Avila's relationship with Umpierrez constituted a complaint about quid pro quo sexual harassment. (Pl.'s Opp'n Br. 8-11.)

An employee making a complaint about an activity that is suspected to be unlawful pursuant to the NJLAD constitutes protected activity under the NJLAD. N.J.S.A. § 10:5-12(d); *Registre v. Trane Techs. PLC*, No. 25-11990, 2026 WL 905452, at *5 (D.N.J. Apr. 2, 2026). Under New Jersey law, a plaintiff need only plead that the employee complaint was reasonable and made with a good faith belief that the complained-of activity was in violation of the NJLAD. *Battaglia*, 70 A.3d at 620; *Gaines v. United Parcel Serv., Inc.*, No. 13-3709, 2014 WL 1450113, at *4 (D.N.J. Apr. 14, 2014). Although the NJLAD does not specifically address workplace sexual harassment, federal precedent regarding Title VII of the Civil Rights Act of 1964 guides interpretation of the NJLAD in matters where the law is silent. *Lehmann v. Toys R Us, Inc.*, 626 A.2d 445, 452 (N.J. 1993). Two types of sexual harassment claims are protected under Title VII: (1) quid pro quo sexual harassment; and (2) hostile workplace sexual harassment.[5] *Id.* Quid pro quo sexual harassment

---

[4] Defendants also contend that Plaintiff's Complaint actually alleges a "paramour preference" scenario which is not a protected activity under the NJLAD. (Defs.' Moving Br. 7.) A paramour preference refers to a situation where "a supervisor is having a romantic affair with an employee which causes that employee to receive certain employment benefits (i.e.[,] a promotion) over other employees." *Whetstine v. Woods Servs.*, No. 21-2289, 2022 WL 221526, at *5 (E.D. Pa. Jan. 24, 2022). The issue of whether paramour preference complaints are considered protected activity has not been decided by the Third Circuit, but all other circuits to rule on the issue have found it is not a protected activity. *See Maner v. Dignity Health*, 9 F.4th 1114, 1118-19 (9th Cir. 2021). The New Jersey Supreme Court has indicated that paramour preference complaints are likely not actionable as protected activity under the NJLAD. *See Erickson v. Marsh & McLennan Co., Inc.*, 569 A.2d 793, 803 (N.J. 1990). Because the Court finds that Plaintiff alleges that he filed a quid pro quo sexual harassment complaint, the Court does not address Defendants' paramour preference arguments.

[5] Neither Plaintiff nor Defendants argue there is a hostile workplace sexual harassment issue here. (Defs.' Moving Br. 6 n.1; *see generally* Pl.'s Opp'n Br.)

7

occurs when there is an "implicit or explicit threat that if the employee does not accede to the sexual demands, he or she will . . . suffer . . . adverse employment consequences." *Id.*

Here, Plaintiff need only plead facts sufficient to show that his employee complaint of quid pro quo harassment was reasonable and made in good faith, not that quid pro quo harassment actually occurred. *See id.* A plaintiff must adequately allege facts that support the inference that their belief was reasonable. *See Carmona v. Resorts Int'l Hotel, Inc.*, 915 A.2d 518, 530 (N.J. 2007); *Bank v. Cmty. Coll. of Phila.*, No. 22-293, 2022 WL 2905243, at *6 (E.D. Pa. July 22, 2022). A reasonable belief is an objective belief that a reasonable person would hold given the same facts. *Fogleman v. Greater Hazleton Health All.*, 122 F. App'x 581, 583-84 (3d Cir. 2004). A reasonable belief may also be a mistaken one. *Id.* An employee complaint does not need to be supported by direct eyewitness to the alleged NJLAD violation; it is sufficient to plead facts that indicate the belief was reasonably founded. *Carmona*, 915 A.2d at 530. A good faith belief is a subjective belief that the activity complained of in an employee complaint was a violation of the NJLAD. *See Fogleman*, 122 F. App'x at 583-84. *Carmona* suggests an employee complaint not made in good faith is one which is "unreasonable, frivolous, bad-faith[,] or unfounded." *Carmona*, 915 A.2d at 521.

The Court finds that Plaintiff sufficiently alleges that his belief that there was quid pro quo harassment was reasonable and made in good faith. The Complaint alleges that: (1) although Umpierrez was known to be difficult to work with and clients communicated concerns about her performance, Avila intervened so Plaintiff would not put her on the detailed PIP that Plaintiff had already developed (Compl. ¶¶ 21-23, 29); (2) Avila requested that Umpierrez be awarded a $10,000 spot bonus (*id.* ¶ 20); (3) colleagues told Plaintiff that Avila and Umpierrez were engaged in a romantic relationship, so Plaintiff should "be careful" (*id.* ¶ 28); and (4) Umpierrez and Avila

8

"appeared to be in a quid pro quo relationship, where in exchange for maintaining a romantic relationship, . . . Avila protected . . . Umpierrez from any attempts to correct her performance issues and . . . included added compensation in the form of bonuses" (*id.* ¶ 19). These allegations, taken as true, are sufficient to support the plausible inference that Plaintiff had a reasonable and good faith belief that there may have been a sexual relationship being traded for job-altering rewards and protection. *See O'Reilly v. Inst. for Cancer Rsch.*, No. 24-5315, 2025 WL 1534969, at *10 (E.D. Pa. May 29, 2025) (explaining that quid pro quo sexual harassment occurs when, among other things, an employee experiences "requests for sexual favors" and "submission to or rejection of such conduct . . . is used as the basis for employment decisions affecting" the employee (citation omitted)). Plaintiff, as a layperson, is not required to have known the precise definition of quid pro quo sexual harassment in order to have made a reasonable employee complaint such that it constituted protected activity under the NJLAD. *Battaglia*, 70 A.3d at 620.

Defendants, moreover, had in place policies and procedures prohibiting sex and gender-based discrimination or harassment, and required employees who believed that they were victims of such discrimination or harassment to report it to managerial staff. (Compl. ¶¶ 12-13.) These policies could lead an objectively reasonable person to believe that an employee complaint about perceived quid pro quo sexual harassment between other employees would be protected from retaliation. *See, e.g., Sample v. Marketstar Corp.*, No. 12-5538, 2014 WL 3894262, at *7 (D.N.J. Aug. 7, 2014) (finding that employer's anti-harassment policy inviting employees to report unlawful harassment without fear of reprisal created reasonable belief that a complaint about racially discriminatory comments was protected activity).

The Court therefore finds that Plaintiff has pleaded facts sufficient to show that he had a reasonable belief that was made in good faith that quid pro quo harassment occurred between Avila

9

and Umpierrez and that such harassment constituted a violation of the NJLAD. *See Sample*, 2014 WL 3894262, at \*7; *see also Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 322 (3d Cir. 2008) (declining to make a determination on the plausibility of a plaintiff's good faith belief that her employer committed an unlawful employment practice of which she complained prior to discovery). Plaintiff, accordingly, has adequately alleged that he engaged in protected activity that was known to Corporate Defendants.

### B.    Causal Connection

The third element of a NJLAD retaliation claim requires showing a causal connection between the protected activity (Plaintiff's employee complaint to Human Resources) and the adverse employment action (Plaintiff's termination). *Battaglia*, 70 A.3d at 619. A plaintiff can demonstrate a causal connection by alleging: "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action; (2) a pattern of antagonism coupled with timing to establish a causal link; or (3) an inference of causation from evidence gleaned from the record as a whole." *Flynn v. City of Scranton*, No. 24-64, 2024 WL 4839367, at \*9 (M.D. Pa. Nov. 20, 2024); *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997).

Defendants argue that Plaintiff has not adequately alleged a causal connection. (Defs.' Moving Br. 9-10; Defs.' Reply Br. 3-5.) A pattern of antagonism is the cumulative effect of "numerous circumstances that suggested termination might occur . . . ." *Weston v. Pennsylvania*, 251 F.3d 420, 432 (3d Cir. 2001). A series of disciplinary actions must be linked to the protected action in order to create a pattern of antagonism. *Thomas v. Bronco Oilfield Servs.*, 503 F. Supp. 3d 276, 313 (W.D. Pa. 2020). Furthermore, "inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence . . . sufficient to support the inference of

10

retaliatory animus" can be used to show a causal connection. *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232-33 (3d Cir. 2007) (citation omitted).

Here, the Court finds that Plaintiff has adequately alleged a causal connection between his employee complaint and his termination. Significantly, Plaintiff alleges that he was placed on a thirty-day PIP which required him to meet with Berryman weekly. (Compl. ¶¶ 46, 50.) Berryman, however, did not schedule any of the required weekly meetings to discuss Plaintiff's progress, and Plaintiff was terminated prior to the end of the thirty days for failing to meet the requirements of the PIP. (*Id.* ¶¶ 50-53.) The unexplained denial of Plaintiff's merit raise (*id.* ¶ 45), and the LinkedIn job posting of Plaintiff's position (*id.* ¶ 40), also followed Plaintiff's employee complaint, which further supports an inference that there was a pattern of antagonism.

Moreover, the sequence of events prior to the filing of Plaintiff's employee complaint contains inconsistencies. For example, in or about September 2024, Plaintiff attempted to place Umpierrez on a PIP, but Avila intervened, and two weeks later Plaintiff was told that *he* was being placed on a PIP and demoted. (Compl. ¶¶ 21-23, 25.) Plaintiff, however, was not at the time actually placed on a PIP or demoted following the meeting, and he received positive feedback from other members of Corporate Defendants' leadership in January 2025. (*Id.* ¶¶ 26, 34.) This sequence of events, examined as a whole, supports the inference that Plaintiff's termination was retaliation for Plaintiff's employee complaint. *See Carswell v. Steak 'N Shake, Inc.*, No. 19-1580, 2021 WL 3553522, at *7 (W.D. Pa. July 27, 2021) (finding that the employer's course of conduct "when viewed in totality support[ed] an inference of retaliation sufficient to support a causal connection between [p]laintiff's complaint and . . . termination"), *R. & R. adopted sub nom., Carswell v. Steak N Shake, Inc.*, No. 19-1580, 2021 WL 3549325 (W.D. Pa. Aug. 11, 2021).

11

The Court therefore finds that Plaintiff has pleaded facts sufficient to support a causal connection between his employee complaint and his termination and has thus stated a claim for retaliation against Corporate Defendants pursuant to the NJLAD.

### C.      Liability of Individual Defendants

Defendants argue that the Individual Defendants cannot be subject to aiding and abetting liability because Plaintiff fails to establish any actual violation of the NJLAD. (Defs.' Moving Br. 11.)

The NJLAD states that it is unlawful "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under [the NJLAD], or to attempt to do so." N.J.S.A § 10:5-12(e). In order to state a claim against the Individual Defendants pursuant to the NJLAD, Plaintiff must adequately allege that they aided and abetted Corporate Defendants in retaliating against Plaintiff.

Aiding and abetting liability under the NJLAD takes two forms: the active form "which requires 'knowing and substantial assistance,' or [the] passive [form] which requires that a 'supervisor holds a duty to act against harassment and yet remains deliberately indifferent to its existence.'" *Dickerson v. Wallkill Valley Reg'l High Sch. Bd. of Educ.*, No. 19-8450, 2020 WL 2847757, at *12 (D.N.J. June 1, 2020) (citations omitted). To state a claim of aiding and abetting in discrimination under the active form, a plaintiff must allege that the individual defendant: (1) aided the party performing a wrongful act that causes injury; (2) was generally aware of his role as part of an illegal or tortious activity at the time he provided the assistance; and (3) knowingly and substantially assisted the principal violation. *Cicchetti v. Morris Cnty. Sheriff's Off.*, 947 A.2d 626, 645 (N.J. 2008).

To state a claim under the passive form, a plaintiff must adequately allege that the "supervisor holds a duty to act against harassment and yet remains deliberately indifferent to its

12

existence." *Lopez-Arenas v. Zisa*, No. 10-2668, 2012 WL 933251, at *10 (D.N.J. Mar. 19, 2012) (citing *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 126 (3d Cir. 1999)). Such "'inaction can form the basis of aiding and abetting liability if it rises to the level of providing substantial assistance or encouragement.'" *Hurley*, 174 F.3d at 126 (quoting *Failla v. City of Passaic*, 146 F.3d 149, 158 n.11 (3d Cir. 1998)).

At this stage, Plaintiff "need only allege sufficient facts giving rise to the inference that [Avila, Mackey, and Berryman] unlawfully aided and abetted" Corporate Defendants. *Wark v. J5 Consulting, LLC*, No. 23-266, 2023 WL 6366731, at *6 (D.N.J. Sep. 29, 2023). Here, the Court finds that Plaintiff has done so. Although Plaintiff does not allege that Avila or Mackey were involved in Plaintiff's termination (*see generally* Compl.), Plaintiff's underlying employee complaint involved the relationship between Avila and Umpierrez, and the alleged "retaliatory conduct against Plaintiff" (*id.* ¶ 36). Plaintiff further alleges that Avila placed him on an undocumented PIP, told him that he was demoted, and excluded him from key client discussions. (*Id.* ¶¶ 25-26, 35.) As to Mackey, Plaintiff alleges that Mackey: (1) failed to follow up about his merit salary increase (*id.* ¶ 45); (2) informed Plaintiff with Avila that he would be demoted and placed on a PIP, although he was not demoted and not placed on a PIP at that time (*id.* ¶ 25); (3) was present on the call when Plaintiff was placed on a subsequent PIP (*id.* ¶ 46); and (4) participated in pressuring him to sign that PIP (*id.* ¶ 49). These allegations taken as true give rise to the inference that Avila and Mackey "unlawfully aided and abetted" Corporate Defendants' retaliatory conduct. *Wark*, 2023 WL 6366731, at *6.

As to Berryman, Plaintiff alleges that Berryman: (1) scheduled the call on which Plaintiff was placed on a PIP (Compl. ¶ 46); (2) pressured Plaintiff into signing the PIP (*id.* ¶ 49); (3) did not schedule any of the required progress meetings for the PIP or discuss Plaintiff's performance

13

with him (*id.* ¶ 50); and then (4) terminated Plaintiff for failure to meet the requirements of the PIP prior to its thirty-day expiration (*id.* ¶¶ 52-53). Taken as true, the allegations that Berryman failed to meet with Plaintiff regarding his PIP after placing Plaintiff on the PIP, which required that the two of them meet weekly, after Plaintiff filed his employee complaint, are sufficient to give rise to the inference that Berryman "unlawfully aided and abetted" Corporate Defendants' retaliatory conduct. *Wark*, 2023 WL 6366731, at *6.

The Court therefore finds that Plaintiff has stated an aiding and abetting liability claim against the Individual Defendants.

## IV.    CONCLUSION

For the reasons set forth herein, Defendants' Motion to Dismiss is denied. The Court will issue an Order consistent with this Memorandum Opinion.

_____

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

DATED: JULY 13th, 2026